# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO. 5:12-cv-00160-RLV-DSC

BOLIER & COMPANY, LLC, and )
CHRISTIAN G. PLASMAN, )
              Plaintiffs, )
v. ) **ORDER**
DECCA FURNITURE (USA) INC., )
DECCA CONTRACT )
FURNITURE, LLC, and RICHARD )
HERBST, )
              Defendants. )

DECCA FURNITURE (USA) INC., )
              Third-Party Plaintiff, )
v. )
CHRISTIAN J. PLASMAN a/k/a )
"BARRETT" PLASMAN, )
              Third-Party Defendant. )

**THIS MATTER** is before the Court on Defendant Decca Furniture (USA) Inc.'s ("Decca USA's") Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5), made pursuant to Federal Rule of Civil Procedure 65 and filed with the Court on October 29, 2012, and Plaintiffs' Motion for Preliminary Injunction and Permanent Injunction (Doc. 24) and Supplemental Motion for Preliminary and Permanent Injunction (Doc. 48), filed November 16, 2012, and January 23, 2013, respectively.

1

The Court has denied expedited consideration of Decca USA's preliminary injunction motion. (Docs. 15, 21.) A hearing was held on the motion, and the parties were given the opportunity to discuss their respective likelihoods of success on the merits, the likelihood of irreparable harm in the absence of preliminary relief, the balancing of equities, and the role of the public interest. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (noting what a party seeking this "extraordinary remedy" must establish). In light of the Court's prior orders, the parties were also encouraged to address fiduciary duties owed by the majority shareholder of a closely held North Carolina limited-liability corporation to a founding minority shareholder, who is also an employee under a written contract.[1]

While counsel for both sides engaged the *Winter* factors at the hearing, only defense counsel meaningfully endeavored to explicate the fiduciary duties owed in this context under North Carolina law, offering a narrow reading of *Meiselman v. Meiselman*, 307 S.E.2d 551 (1983).

> As previously discussed, Defendant Decca USA is a fiduciary relative to the corporation itself and to Plaintiff Plasman as minority shareholder; accordingly, Decca USA may not deprive Plaintiff of his "reasonable expectations" in the corporation. [*Meiselman*, 307 S.E.2d at 568.] To do so is a breach of the duty of loyalty. *See id.*
>
> In some contexts, it has been held that "continued employment and meaningful participation in the management of the business may be reasonable expectations of a minority shareholder . . . ." *Clark v. B.H. Holland Co., Inc.*, 852 F. Supp. 1268, 1274 (E.D.N.C. 1994) (deeming this issue a question of fact under North Carolina law, which could not be resolved on a motion for summary judgment). Such an expectation of continued employment, however, must be balanced against the employment-at-will doctrine and the corporation's legitimate business interests, and a fiduciary-duty-based safeguard of a minority shareholder's employment has been held to apply in other states primarily where the job is demonstrated to be a part of that shareholder-employee's investment. *See, e.g.*, *In re Kemp & Beatley, Inc.*, 473 N.E.2d 1173, 1178 (N.Y. 1984)

---

[1] Since the hearing, the Plasmans have been barred from entering Bolier & Co.'s principal place of business, a property owned by Defendant Decca USA, and Decca USA has taken over Boiler & Co.'s business operations. (Doc. 58 at 2.)

> (quoting 1 F. Hodge O'Neal, *Close Corporations* § 1.07 (1971)) (suggesting that when actual dividends are not paid, a minority shareholder who is discharged from employment may be effectively denied any return on his investment).

(Doc. 21 at 2–3) (footnotes omitted). Influenced by the courts of New York and Illinois, the Supreme Court of North Carolina adopted in *Meiselman* a reasonable-expectations approach to determining whether challenged conduct is impermissibly oppressive to a minority shareholder in a closely held corporation so as to merit dissolution of that corporation. *See generally Gidwitz v. Lanzit Corrugated Box Co.*, 170 N.E.2d 131 (Ill. 1960) (concluding that it was "not necessary that fraud, illegality or even loss be shown" to exhibit "oppression," which was a basis for liquidation under the Illinois Business Corporation Act of 1933); *In re Topper*, 433 N.Y.S.2d 359 (Sup. Ct. 1980) (holding that the matter of "[w]hether the controlling shareholders discharged petitioner for cause or in their good business judgment is irrelevant" and finding that "the undisputed understanding of the parties was such at the time of the formation of the corporations that the respondents' actions have severely damaged petitioner's reasonable expectations" and so were deemed "oppressive" within the statutory framework); *see also generally In re Kemp & Beatley, Inc.*, 473 N.E.2d 1173 (N.Y. 1984) (clarifying the concept of oppressive conduct, under the statute, as distinct from illegality or fraud "by considering oppressive actions to refer to conduct that substantially defeats the 'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise"). In light of the state statutory focus,[2] the court in *Meiselman* "offered new insight in applying the reasonable expectations test, . . . [focusing] upon protecting the rights and interests of the shareholder rather than upon oppression." Charles W. Murdock, *The Evolution of Effective Remedies for Minority*

---

[2] The provisions addressed in *Mieselman*, N.C. Gen. Stat. §§ 55-125(a)(4) and 55-125.1 (1982), were replaced by N.C. Gen. Stat. §§ 55-14-30 and 55-14-31 (1990), which incorporate the old dissolution section but not the old alternative-relief section.

*Shareholders and Its Impact Upon Valuation of Minority Shares*, 65 Notre Dame L. Rev. 425, 469 (1990).

The protections afforded by *Meiselman* and its progeny developed in light of the generally applicable principle of majority rule. Bound by agreement, statute, and doctrine, the majority in interest otherwise has the right to control corporate affairs. *See, e.g.*, *Gaines v. Long Mfg. Co.*, 67 S.E.2d 350, 354 (N.C. 1951) ("The majority has the right to control; but when it does so, it occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors."); (*see also* Doc. 7-2 at 11) (providing that "all decisions or actions of the Company . . . or the Members shall require the approval, consent, agreement, or vote of the Majority in Interest").

Here, the prior conduct of Plaintiff Plasman in continuing to manage and to control the operations of Bolier & Co. has deprived the majority of this right. However, in light of Plaintiffs' claim that Defendants have engaged in self-serving transactions, the imposition of safeguards enabling Plaintiff Plasman to check the threat of self-dealing would be appropriate.

Defendants have proposed the following conditions, among others, to remain in effect pending the resolution of this case:

(1) Plaintiff Plasman is to be enjoined from holding himself out as President or CEO or Bolier & Co.;
(2) Third-Party Defendant Barrett Plasman is to have no further authority as an employee of Bolier & Co.;
(3) The Plasmans are to be prohibited from entering Decca USA or Bolier & Co. property without Decca USA's permission, and upon reasonable request, Decca USA shall grant such permission to Plaintiff Plasman in his role as minority member-manager;
(4) The Plasmans are to be enjoined from removing any property or fixtures from Bolier & Co.'s or Decca USA's premises without the written authorization or permission of Decca USA;
(5) The Plasmans are otherwise enjoined from interfering with Decca USA's or Bolier & Co.'s business operations;

(6) Within five business days of the entry of this Order, the Plasmans are to return to Decca USA's Bank of America lockbox all of Bolier & Co.'s monies, including but not limited to customer payments, diverted to them or to any bank account under their control, and such funds must be paid with a certified check;

(7) Within five business days of the entry of this Order, the Plasmans are required to provide an accounting to Decca USA, also to be filed with the Court, of all funds that were diverted from October 19, 2012, to the present, detailing who made the payments, when the payments were received, the payment amounts, and the purpose of the payments;

(8) Decca USA shall provide Plaintiff Plasman with copies of Bolier & Co.'s financial statements on a monthly basis;

(9) At Plaintiff Plasman's request, all of Bolier & Co.'s books and records, including royalty and licensing payments, may be inspected and examined once every six months by an accountant of Plaintiff Plasman's choice at his expense at the Decca USA office or at a mutually agreeable location;

(10) Decca USA shall provide Plaintiff Plasman with copies of Bolier & Co.'s federal, state, and local income tax returns for each year beginning with 2012;

(11) Decca USA shall provide Planitiff Plasman with any other information regarding Bolier & Co.'s affairs as is just and reasonable, or otherwise required by N.C. Gen. Stat. § 57C-3-04 or Bolier & Co.'s Operating Agreement;

(12) A member-manager meeting shall be held bi-annually, in April and October, in which Plaintiff Plasman may provide Bolier & Co. with his input regarding the company's management and affairs; and

(13) With regard to these member-manager meetings, Decca USA shall provide Plaintiff Plasman with at least ten days', and no more than fifty days', notice of the date, time, and place of such meetings.

*The Court so orders*. While additional conditions specific to the operations of Bolier & Co. may be appropriate, the relief thus far requested by Plaintiff is inappropriate at this stage of the litigation. Accordingly, while the Court here affirms Defendants' general control of Bolier & Co., it likewise grants Plaintiffs leave to submit additional, reasonable requests for preliminary, injunctive relief.

Per *Winters*, the balance of equities favors Defendants' control, limited by these (and potentially other) safeguards of Plaintiff Plasman's interests. Moreover, the Court finds unpersuasive Plaintiff Plasman's arguments regarding the irreparable harm that would result

from Defendants' control. Decca USA is one of many subsidiaries of Decca Holdings Limited, which reported a 2011 consolidated revenue of about HK$634.6 million and net loss of HK$12.8 million. Decca Holdings Limited, Annual Report 2011, at 5 (2011), *available at* http://www.decca.com.hk/ download/reports/Annual%20Report%202011%20(e).pdf.[3] While some officers of other, wholly owned Decca USA subsidiaries may have expressed doubts as to the abilities of Mr. Richard Herbst, President of Decca USA (Doc. 25-1 at 2; Doc. 25-3 at 6, 41–42), and while some Bolier business partners and customers may no longer be interested in continuing their relationships with Bolier & Co. without Plaintiff Plasman as the company's President and CEO (*see, e.g.*, Doc. 25-2 at 2; Doc. 25-6 at 2; Doc. 48-7 at 2), the Court finds it difficult to believe that Decca USA, which manufactures and distributes furniture throughout the United States via several American operations, and is part of a large corporate enterprise rooted in the furniture industry since 1973, is incapable of responsibly managing Bolier operations.

Moreover, Plaintiff Plasman has offered little in the way of establishing his reasonable expectation of indefinite employment as Bolier & Co.'s President and CEO. In light of the Operating Agreement and Employment Agreement, written against the backdrop of North Carolina's employment-at-will doctrine, the Court will decline to issue a preliminary injunction temporarily securing his role as President and CEO. *See Royals v. Piedmont Elec. Repair Co.*, 529 S.E.2d 515, 518 (N.C. Ct. App. 2000) (articulating the four-step process under *Meiselman* for obtaining relief based upon the complaining shareholder's "reasonable expectations," the first

---

[3] The same report cites net profits of HK$78.3 million, HK$64.1 million, and HK$39.4 million in 2007, 2008, and 2009, respectively. Relative to 2010, the 2011 figures were improved on the whole, though U.S.-based revenue declined 39.1%. *Id.* at 3 (subsequently noting the depressed state of the U.S. hospitality sector). The overall "increase in profitability was mainly due to the Group's [Decca Holdings Limited's] effort in exercising more stringent cost control. *Id.*

step being that "the complaining shareholder must prove he had one or more substantial reasonable expectations that were known or assumed by the other shareholders").

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5) be **GRANTED** in part and **DENIED** in part. Until the Court orders otherwise, the parties shall comply with the thirteen conditions articulated above. Additional conditions may be imposed upon subsequent motion of Plaintiff Plasman, to be filed with the Court within fourteen days of the date on which this Order is filed. Defendants shall be given one week from the date on which Plaintiff's motion is filed to respond.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction and Permanent Injunction (Doc. 24) be **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Supplemental Motion for Preliminary and Permanent Injunction (Doc. 48) be **DENIED**. The Court shall address Plaintiffs' Motion to Show Cause and Motion for Sanctions, embedded within the same document, in a subsequent order.

Signed: February 27, 2013

Richard L. Voorhees
United States District Judge